119 T.C. No. 8

UNITED STATES TAX COURT

SCHNEIDER INTERESTS, L.P., RUSS SCHNEIDER FARMS, L.L.C., TAX
MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 200-02.                    Filed September 30, 2002.

Four months after the instant case was docketed, R sent
P a so-called <u>Branerton</u> letter consisting of 68 pages of
questions and requests for documents.  Thirty-five days
later, R instituted formal discovery by serving upon P 77
pages of interrogatories and 78 pages of requests for
production of documents.  R rejected P's suggestion that
compliance with formal discovery be postponed until the
parties held a conference, stating that the instant case is
"a good candidate for designation for litigation under IRM
35.3.14."  P then filed a Motion for Protective Order
seeking to stay compliance with formal discovery.  <u>Held</u>, a
protective order shall be issued.  R's service of formal
discovery is inconsistent with Rule 70(a)(1) and with the
cases, such as <u>Branerton v. Commissioner</u>, 61 T.C. 691
(1974), which direct the parties to utilize informal
consultation or communication before employing the formal
discovery procedures.

Scott G. Miller, N. Jerold Cohen, and Thomas A. Cullinan, for petitioner.

Michael Zima and John J. Comeau, for respondent.

OPINION

WELLS, Chief Judge: The instant case is before us on Petitioner's Motion for a Protective Order, Motion to Strike, and Motion for Leave to File Reply to Respondent's Objection to Petitioner's Motion for Protective Order.

Background

During August 2001, the tax matters partner (TMP) of Schneider Interests, L.P. (the partnership), received notice from respondent that the partnership's tax year ended December 31, 1997 (taxable year in issue), was being audited. Three weeks later, respondent mailed a notice of final partnership administrative adjustment (FPAA) to the TMP. The FPAA was dated September 13, 2001, 2 days before expiration of the time period within which respondent could issue an FPAA for the partnership's taxable year in issue. The mailing of the FPAA to the TMP took place the day before respondent received on the prescribed Form 872-P the TMP's timely consent to extend the period of limitations for issuance of an FPAA for the partnership's taxable year in issue. On November 26, 2001, a revenue agent wrote to petitioner's counsel Scott Miller. The agent apologized for the precipitate mailing of the FPAA but explained that the Office of

Chief Counsel, in Washington, D.C., had decided that the FPAA, once issued, could not be withdrawn. On January 2, 2002, petitioner filed its petition in this Court seeking a review of the adjustments set forth in the FPAA, and respondent filed an answer on March 7, 2002.

On May 10, 2002, respondent's counsel sent to petitioner a so-called Branerton letter (Branerton letter). The Branerton letter stressed that the case is "not ripe for consideration" by the Internal Revenue Service's Appeals Division. The Branerton letter further stressed that factual development of the case was necessary because this Court might set the case for its October session in Tampa, Florida. The Branerton letter consists of 68 pages of questions and requests for production of documents. According to petitioner, the Branerton letter contains 155 parts and 450 subparts and sought a response by June 12, 2002. On June 14, 2002, respondent served formal discovery (formal discovery) on petitioner's attorney Scott G. Miller. The formal discovery consists of 77 pages of Respondent's Interrogatories and a 78-page Request for Production of Documents. The formal discovery appears to represent a recasting of the requests made in the Branerton letter in a form meant to comply with the Rules[1] for formal discovery. See Rules 71 and 72.

---

[1] All section references are the Internal Revenue Code of 1986, as currently in effect. All Rule references are to the Tax Court Rules of Practice and Procedure.

There is some dispute about the timing of a related development. Petitioner's attorney N. Jerold Cohen called respondent's counsel on behalf of petitioner. Petitioner contends that the telephone conversation left Mr. Cohen with the impression that the parties would continue with informal discovery. Mr. Cohen's subsequent correspondence indicates that he placed the call on June 11, 2002, the day before the response to the Branerton letter was due. Respondent maintains that the telephone conversation took place "a day or two" after June 14, 2002, the day respondent sent the formal discovery.

On June 17, 2002, Mr. Cohen wrote to respondent's counsel. Mr. Cohen questioned the scope of the requests made in the Branerton letter and suggested that the case proceed to respondent's Appeals Office. Because other parties had engaged in similar transactions, Mr. Cohen suggested exploring a "global" settlement, and he proposed an informal conference during August 2002 between the parties' representatives. Mr. Cohen did not indicate in the June 17, 2002, letter whether he was then aware of respondent's formal discovery requests.

On June 19, 2002, respondent's counsel replied, stating that, although a conference is not a necessary predicate to informal discovery, counsel nevertheless would "welcome a telephonic conference any time you and Mr. Miller are available." The June 19, 2002, letter further stated, however: "We do expect

petitioner to respond to our discovery." The letter explained that factual development was needed not only for purposes of this case, but also "to set the factual predicate for third party discovery." Respondent's counsel suggested that petitioner might wish to cooperate in depositions of nonparty witnesses under Rule 74. The June 19, 2002, letter further stated:

> We are interested in developing the facts in this case because we believe it is a good candidate for designation for litigation under IRM 35.3.14. Accordingly, we do not believe that postponing discovery until August, as you suggest, is an appropriate course of action for this case.

On July 5, 2002, petitioner filed the instant motion for a protective order, seeking a stay of formal discovery "until the parties have had sufficient time to confer and have engaged in meaningful informal discovery." On July 11, 2002, this Court entered an order staying compliance with respondent's interrogatories and request for production of documents pending consideration of the instant motion for a protective order. The Court subsequently received respondent's Notice of Objection to Petitioner's Motion for a Protective Order. Respondent's objection is 23 pages long, exclusive of 6 additional charts and 11 other attachments. Ten days later, on August 1, 2002, petitioner responded to respondent's objections by sending to this Court both a Motion to Strike and a separate Reply to Respondent's Objection to Petitioner's Motion for Protective

Order together with a motion for leave to file that reply. We address the 3 motions herein.

## Discussion

Congress has provided this Court with its own rulemaking authority. Section 7453 of the Internal Revenue Code states that, with the exception of certain small tax cases, proceedings before this Court are to be conducted in accordance with such rules of practice and procedure as this Court may prescribe. Pursuant to that grant of authority, this Court promulgated Rule 70(a)(1), which states, in part: "the Court expects the parties to attempt to attain the objectives of discovery through informal consultation or communication before utilizing the discovery procedures provided in these Rules." In 1979, the Court emphasized its insistence upon informal discovery by adding the language quoted above to Rule 90(a), which applies specifically to Requests for Admissions. See Odend'hal v. Commissioner, 75 T.C. 400, 403 (1980).

A principal purpose of the requirement for informal discovery is to save the time and resources of the Court and of the parties before it in the development of relevant and undisputed facts. In Branerton Corp. v. Commissioner, 61 T.C. 691, 692 (1974), we explained:

> The discovery procedures should be used only after the parties have made reasonable informal efforts to obtain needed information voluntarily. For many years the bedrock of Tax Court practice has been the stipulation

process, now embodied in Rule 91.  Essential to that process is the voluntary exchange of necessary facts, documents, and other data between the parties as an aid to the more expeditious trial of cases as well as for settlement purposes.  The * * * discovery procedures were not intended in any way to weaken the stipulation process. * * *  [Fn. Ref. omitted.]

We amplified upon these principles in Intl. Air Conditioning Corp. v. Commissioner, 67 T.C. 89, 93 (1976), where we said:

Rule 70(a)(1) contemplates "consultation or communication," words that connote discussion, deliberation, and an interchange of ideas, thoughts, and opinions between the parties.  Petitioners' refusal to enter into any informal discussion prior to receiving responses to interrogatories--whether formally submitted under Rule 71, or informally submitted in a letter--"sharply conflicts with the intent and purpose of Rule 70(a)(1) and constitutes an abuse of the Court's procedures."  Branerton Corp., supra at 692 * * *.

The specialized scope of cases before this Court makes the informal discovery procedures mandated by Rules 70(a) and 90(a) especially useful.  For example, the requirement in section 6001 that taxpayers maintain adequate records promotes the informal development of much relevant evidence.  Additionally, under sections 7602 and 7609, the Commissioner, who is always a party to cases before us, possesses broad statutory authority to compel the production of documents and testimony by the use of administrative summonses even before a case is filed in our Court.  See Ash v. Commissioner, 96 T.C. 459 (1991).

Many years of experience with the use of informal discovery in a variety of circumstances have demonstrated to our satisfaction the efficacy of that procedure. We see no reason to modify that procedure because here respondent proposes to develop a test case. Respondent's correspondence contemplates that the instant case will involve a "designated issue" under Internal Revenue Manual sec. 35.3.14., "Designation for Litigation Procedures." That section provides:

> In order to resolve recurring significant issues, establish judicial precedent, conserve resources, or reduce litigation costs for the Service and taxpayers, it is appropriate to designate that an issue in a case be litigated rather than settled. In a case in which an issue has been designated for litigation, it is the position of the Office of Chief Counsel that the designated issue is not to be settled without a full concession by the taxpayer * * *. [Id. at sec. 35.3.14.2.]

As a general proposition, we agree that the Commissioner is entitled to all relevant information regarding the matters in issue before this Court, and we agree that the Commissioner is entitled to that information without undue delay. The purpose of our discovery rules, however, is not to assist respondent in developing a test case. As we have explained: "The purpose of discovery in the Tax Court is to ascertain facts which have a direct bearing on the issues before the Court." To that end, "we have the power to uphold the integrity of the Court's process by enforcing the limited discovery that, by rule, we have adopted." Ash v. Commissioner, supra at 463, 470-471.

In the instant case, respondent has not demonstrated that most, if not all, of the information respondent needs could not be obtained through the informal procedures required by Rules 70(a), 90(a), and our Branerton opinion. See Branerton Corp. v. Commissioner, supra. Indeed, we believe that informal discovery would be particularly useful to respondent, where, as here, the examination phase of respondent's inquiry was truncated by a premature issuance of the FPAA. Under such circumstances, respondent may well be able to use informal discovery procedures to complete the administrative investigation that presumably would have been undertaken if the period for issuance of the FPAA had been extended.[2] The actions of respondent's counsel in the instant case lead us to believe that he does not fully appreciate the importance of our Branerton opinion. His insistence on compliance with his formal discovery requests in advance of any conference between the parties does not effectively present an opportunity for the "discussion, deliberation, and an interchange of ideas, thoughts, and opinions between the parties" that our rules contemplate. See Intl. Air Conditioning Corp. v. Commissioner, supra at 93.

---

[2]Informal discovery will provide respondent with a basis to decide whether respondent may pursue unconsented deposition testimony under Rule 75--a procedure which, respondent indicates, may be necessary.

We conclude that, under the circumstances of the instant case, a protective order should be issued. The order will direct the parties to participate, in good faith, in informal conferences during the next 90 days. The conferences shall be directed to developing stipulated facts for purposes of the instant litigation. After that time, if there are matters still unsettled, the parties may resort to the formal discovery provisions of the Tax Court Rules.

There are two other motions to consider. One is petitioner's Motion for Leave to File a Reply to Respondent's Objection to Petitioner's Motion for Protective Order, which we shall deny as moot. The other is petitioner's Motion to Strike, as unnecessarily argumentative, certain paragraphs in Respondent's Objection to Petitioner's Motion for Protective Order, which we shall also deny. A description of the parties' positions is necessary to our consideration of a request for a protective order. To the extent that respondent may have provided more exposition than may have been necessary (obviously missing the point of petitioner's objection to proceeding with formal discovery), we shall ignore it. When and if this case is submitted, we shall base our decision on the facts agreed to or developed at trial and upon the arguments set forth in the posttrial briefs.

To date, the parties have expended considerable resources and involved this Court in controversies that they should have resolved quickly between themselves.  From this point forward, we expect the parties to develop this case in a spirit of cooperation and good faith.

In view of the foregoing,

An appropriate order will be issued.